UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-cv-80858-WPD

OSCAR MARTIN, YANAPHIS
MORENO, MAXIM SHKOLNIK,
individually and on behalf of all
others similarly situated,

    Plaintiffs,

vs.

COASTAL TRUCKING INSURANCE LLC,
a Florida limited liability company, and
SIMON ASHI, individually,

    Defendants.
_____/

## JOINT MOTION FOR DISMISSAL WITH PREJUDICE AND FOR SETTLEMENT APPROVAL

Plaintiffs and Defendants, by and through their respective undersigned counsel, jointly move this Honorable Court for review and approval of their mediated settlement agreement and a dismissal with prejudice of this action. In support thereof, the parties state as follows:

1. On July 16, 2024, Plaintiffs Oscar Martin, Yanaphis Moreno, and Maxim Shkolnik filed a collective action complaint against Coastal Trucking Insurance LLC for (1) minimum wages under the Fair Labor Standards Act ("FLSA"), (2) unpaid overtime under the FLSA, and (3) violation of 26 U.S.C. § 7434, ECF No. [1].

2. On September 27, 2024, Plaintiffs filed an Amended Complaint dropping count III, ECF No. [14].

3. On November 19, 2024, Plaintiffs filed a Second Amended Complaint, adding Simon Ashi, individually, as a defendant, ECF No. [36].

4. Counts I and II alleged nationwide class violations of the FLSA's statutory minimum wages and maximum hours provisions.

5. On October 1, 2024, Plaintiffs filed their motion to conditionally certify collective action and facilitate notice to similarly situated employees, ECF No. [16].

6. The parties entered into a joint notice of resolution of the motion to conditionally certify and on October 15, 2024, this Court entered its order granting the motion to conditionally certify. ECF Nos. [23] and [24].

7. Three additional plaintiffs filed consents to join this action, for a total of six (6) plaintiffs.

8. Prior to the filing of this action, in or about January 2024, Coastal filed three separate state court lawsuits against the named-Plaintiffs seeking repayment of alleged advanced commissions and/or salary. *See, e.g.*, *Coastal Trucking Ins., LLC v. Oscar Martin*, Case No. 502024CC000929XXXANB(RH), *Coastal Trucking Insurance, LLC v. Maxim Shkolnik*, 502024CC000935XXXXANB(RH), and *Coastal Trucking Insurance, LLC v. Yanaphis Moreno*, 502024CC000933XXXANB(RH), all pending in the County Court in and for Palm Beach County, Florida. Those state court actions were extensively litigated.

9. On or about March 21, 2025, the parties attended a global mediation to resolve both this action and the state court lawsuits, which resulted in a settlement of all cases.

10. This case is unique and does not involve typical garden-variety unpaid wage claims with which this Court is more than familiar. Rather, this case presents what the undersigned counsel believe is an issue of first impression in the Eleventh Circuit. The central crux of the case turns on the application of certain pay policies applicable to Plaintiffs and the FLSA's "free and clear" doctrine relating to the payment of minimum wages. As further described in Plaintiffs'

motion for conditional certification, Coastal classified its sales agents as either independent contractors or employees. Plaintiffs alleged the contractors were misclassified. As further alleged, Coastal advanced certain compensation to the sales agents at the inception of their employment; however, the sales agents are not permitted to retain any part of the advance compensation unless their actual commissions exceed the advancement. Thus, the pay policy *at the same time* both *"guarantees"* certain minimal income to the sales agents, but also makes the entire minimal income *"conditional"* by requiring the sales agents to refund any amounts to Coastal if they cease to be employed by Coastal for any reason; to wit:

> **Independent Contractor Compensation**: Any advancement of commission, if any, by the Agency to the Independent Contractor will be owed in full to the Agency within 30 days of separation if the advancement exceeds commission earned by agent and labelled as compensation. If an advancement is provided against commissions to the Independent Contractor, and the arrangement does not meet twelve months, any outstanding advancement will be owed back as outlined in this agreement along with a ten percent penalty.
>
> **Employee Compensation**: Employee shall be paid an advanced salary of $40,000 per year, payable in equal biweekly installments minus all applicable withholdings. Base salary will be based on all accrued commission minus the monthly advancement…

11. While the W-2 employee agreements, on their face, do not expressly require the employees to return the money, in practice, Coastal commences legal action against sales agents to pursue the recovery of alleged "shortfalls" it claims are due from those sales agents whose employment with Coastal terminates, involuntarily or otherwise, and contends the agreements signed by those sales agents correctly classified as W-2 employees contemplate they – like the 1099 independent contractors – are only entitled to retain advanced funds if their generated commissions exceeded the amount of the advancement at the time of termination.

12. Defendants strenuously contested Plaintiffs' entire case and theory, claiming Plaintiffs' claim rests entirely upon one non-binding Sixth Circuit case reversing an order granting

3

a motion to dismiss, *Stein v. hhgregg, Inc.*, where the court held a pay policy allowing the defendant to recoup monies that *could be* interpreted by employees to include minimum wages violated the FLSA regardless of whether the defendant clawed back minimum wages or not. 873 F.3d 523, 536 (6th Cir. 2017). Nonetheless, the *hhgregg* court ruled that the company violated the FLSA in including a claw back provision even though *hhgregg* never actually clawed back any minimum wages. This issue has not yet been addressed in this jurisdiction, and it is Defendants' position that if this Court were to adopt that interpretation here then that would allow Plaintiffs to receive full minimum wages, <u>and</u> an award of minimum wages already received <u>and</u> liquidated damages.

13. As such, Plaintiffs knew and understood they faced an uphill battle in this case, albeit they believed for a just and worthy cause. Defendants also were aware of the risk and potential exposure it faced in this case but defended against Plaintiffs' allegations all the way. Counsel were zealous advocates for their respective clients.

14. Plaintiffs also knew and understood that even if they prevailed, the potential recovery of liquidated damages certainly was not a given, as is typically the case in most garden-variety FLSA cases, adding to the risk.

15. In addition, prior to the filing of Plaintiffs' lawsuit, Coastal had pursued its own claims, and filed its own lawsuits against the named-Plaintiffs, asserting claims for repayment of alleged refund balances owed on the conditional income previously paid to Plaintiffs.

16. The parties engaged in informal discovery and conferred on multiple occasions to exchange and obtain informal information concerning Plaintiffs' claims and Defendants' defenses.

17. Since the inception of this case, the parties and their counsel informally explored potential resolution of not just the FLSA claims, but Defendants' alleged claims against the

Plaintiffs, as part of a "global" resolution of all claims. After approximately eight (8) hours of mediation, the parties were able to fully resolve this matter.

18. The settlement obligates Defendants to pay Plaintiffs non-wage compensatory damages that was calculated based upon amounts alleged to be owed for unpaid overtime and minimum wages, liquidated damages, and additional compensation (such as reimbursement of out-of-pocket attorney's fees and costs incurred by the named-Plaintiffs in the state court action). The payments to Plaintiffs are categorized as non-wage compensatory damages due, in part, to the fact that the majority of the Plaintiffs had been classified as contractors and had never received a payroll style check or W2 from Coastal. Further, the majority of the Plaintiffs ceased working for Defendants in 2023. Indeed, one of the issues in the case was whether most of the Plaintiffs were correctly characterized as 1099 independent contractors, but rather than litigate, the parties determined to settle the case. Thus, the Plaintiffs' proceeds are designated as non-wage compensatory damages (and again, also due to the fact that the named Plaintiffs also received reimbursement for out-of-pocket expenses for fees and costs incurred in the state court actions). Defendants will issue 1099s to Plaintiffs for these monies. The Agreement confirms as much.

19. In addition, Plaintiffs' counsels separately allocated and negotiated the claim for reasonable attorney's fees and costs. While Plaintiffs retained their counsels on a contingent fee basis, under the terms of the settlement, Plaintiffs will retain 100% of their settlement proceeds and Defendants will pay the Plaintiffs' counsels a separate amount for negotiated attorneys' fees and costs.

20. In addition, the agreement includes a full *mutual* general release, which, for the Plaintiffs, adds significant value to the settlement, separate and apart from any monetary terms, as there were actual, and not theoretical, claims, at issue here (separate and apart from the FLSA

claims). Further, the settlement agreement provides for a release of the Plaintiffs' non-compete provision and other broad restrictive covenants in their agreements with Coastal.

21. In exchange for the settlement proceeds and these additional negotiated terms, Plaintiffs agreed to dismiss the claims brought in this action with prejudice and Coastal agreed to dismiss the state court lawsuits with prejudice. The parties stipulate that they have a bona fide dispute and are resolving the matter to avoid the cost and time of litigating the issues and the risks associated with continued litigation. Counsel for the parties represent the settlement entered by the parties was an arms-length compromise and there was no collusion regarding the settlement of this matter. Indeed, this was a mediated settlement.

22. Counsel for the parties also represent the continuation of this litigation would necessitate further expense causing additional expenditures of costs and attorney's fees.

23. Counsel for the parties agree, in their respective opinions, the settlement is fair and reasonable under the circumstances.

24. Counsel for the parties agree and acknowledge the amount negotiated as attorney's fees and costs is reasonable and was negotiated separately from the amount that was agreed upon for Plaintiffs' underlying claims for minimum wage and overtime. The fees also include time spent litigating and negotiating the claims Coastal had asserted against Plaintiffs, culminating in the mutual general release term of the settlement. Plaintiffs' counsel also negotiated a consent judgment against Defendants, jointly and severally, in the event of a payment default as the payment of the settlement proceeds includes installment terms.

25. Given the complexity and uniqueness of the issues, the risks present for both sides, the total value and benefit obtained by the Plaintiffs, and the parties' desire to achieve a global resolution of all potential claims that could have arisen out of the employment relationship between

the parties, including the resolution of the FLSA claims at issue here, the parties believe the settlement is fair and reasonable under the circumstances and accordingly request this Court to approve their global settlement. The parties respectfully request the Court review and approve the settlement as fair and reasonable, and stipulate to the dismissal of this action with prejudice. The parties agree to the dismissal of this action with prejudice and request the Court retains jurisdiction solely to enforce the terms of the settlement agreement. *See Anago Franchising, Inc. v. Shaz, LLC,* 677 F.3d 1272, 1280 (11th Cir. 2012).

## MEMORANDUM OF LAW

**Standard of Review**

Judicial review and approval of portions of this settlement is necessary to give it final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn's Food Stores*:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id.* at 1352-53.

"Where the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required." *Feagans v. Americana Jax Inv., Inc.,* 3:07-cv-433-J-33HTS, 2008 U.S. Dist. LEXIS 21974, 2008 WL 782488, at *1 (M.D. Fla. Mar. 20, 2008); *see also, Mackenzie v. Kindred Hosps. E., LLC.,* 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) ("Since the plaintiff has been offered full compensation on his claim, this case does not involve a compromise. There is no need for [*4] judicial scrutiny. . . ."). Even so, in an abundance

7

of caution, the Parties are submitting the settlement even though there has been no compromise of the unliquidated amounts sought (albeit requesting the Court review same *in camera* or at a fairness hearing).

Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

(1) the existence of fraud or collusion behind the settlement:

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287 at *2-3 (M.D. Fla. Jan. 8, 2007). S*ee also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498 at *6 (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enter., Inc.,* No. 6:05-cv-1247-Orl-JGG, 2006 U.S. Dist. LEXIS 22066 at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a fair settlement. *Hamilton*, 2007 U.S. Dist. LEXIS at *2-3. *See also Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

A.      **All Relevant Criteria Support Final Approval of the Settlement.**

First, courts have found no fraud or collusion where both parties were represented by counsel and the amount paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *11-12 (M.D. Fla. Dec. 21, 2006). Here, the Parties were independently represented by counsel.

All counsel involved have extensive experience in litigating claims under the Fair Labor Standards Act, including collective action claims for unpaid overtime and minimum wages. Each counsel was obligated to and did vigorously advocate for their clients.

The complexity, expense, and length of future litigation also militate in favor of this settlement. If the parties continued litigating this matter, they would be forced to engage in costly and protracted litigation to prove their claims and defenses.

However, to resolve the litigation, Defendants are paying Plaintiffs for alleged unpaid overtime and minimum wages, with liquidated damages, plus additional non-wage compensatory damages to certain Plaintiffs, costs, and attorneys' fees, along with a negotiated full general release. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

Third, there has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The parties exchanged information and documentation regarding Plaintiffs' hours and pay, including commissions, the scope of the potential class, and other related information. In agreeing upon the proposed settlement, the parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

The last element the Court should evaluate in determining the fairness of the settlement is the reasonableness of the attorneys' fees. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). In determining the reasonableness of attorneys' fees, the lodestar is recognized as a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Helms* at 5. Courts have held, however, that it is unnecessary to inquire into the reasonableness of the hourly rate charged by plaintiff's counsel where both parties stipulate as to the reasonableness of the attorney's fees. *Id.* at 12.

Here, the parties agree the amount negotiated and agreed upon as attorney's fees and costs is reasonable based on the time spent by Plaintiffs' counsel in prosecuting and resolving the Plaintiffs' claims, the risk involved, and the total settlement value and benefit obtained by Plaintiffs. The parties negotiated the fees separately from the Plaintiffs' settlement payment and the fees were not negotiated in relation to or as a portion of Plaintiffs' recovery. *See Bonetti v. Embarq Management Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Therefore, both parties request this Court find the proposed attorneys' fees reasonable.

## **CONCLUSION**

The settlement terms are fair, reasonable, and adequate and the parties' interest in maintaining confidentiality of the settlement outweighs the public's interest in the matter. Accordingly, the parties respectfully request the Court review the agreement, grant this Joint Motion for Approval of the Settlement and enter a Final Order of Dismissal with prejudice in this action, reserving jurisdiction only to enforce the terms of the settlement.  A copy of the parties

agreement is attached hereto as Exhibit "A."

WHEREFORE, Plaintiffs and Defendants jointly request that the Court enter an order approving the Parties' settlement, dismissing this action with prejudice, and reserving jurisdiction to enforce the terms of the settlement, should such enforcement be necessary. A proposed order is provided herewith.

Respectfully submitted on April 3, 2025.

**Robin I. Frank**
DANIEL R. LEVINE, ESQ.
Florida Bar No. 0057861
E-Mail:  DRL@PBL-Law.com
ROBIN I. FRANK, ESQ.
Florida Bar No. 0649619
E-Mail:  RIF@PBL-Law.com
PADULA BENNARDO LEVINE, LLP
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, FL   33431
Telephone:    (561) 544-8900
Co-Counsel for Plaintiffs

**Brian D. Buckstein**
BRIAN D. BUCKSTEIN, ESQ.
Florida Bar No. 0618934
E-Mail:  bbuckstein@gsblawfirm.com
GONZALEZ, SHENKMAN &
   BUCKSTEIN, P.L.
110 Professional Way
Wellington, FL 33414
Telephone: (561) 227-1575
Attorneys for Defendant

**Allison B. Duffie**
ALLISON B. DUFFIE, ESQ.
Florida Bar No. 649902
E-Mail:  allison@duffie.law
DUFFIE LAW, PLLC
2234 North Federal Hwy., Suite 1196
Boca Raton, FL 33431
Telephone:    (561) 440-1196
Counsel for Plaintiffs